UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, v. **H & P PROTECTIVE SERVICES, INC., C/O FREDERICK HALL**, Defendant. | 2:25-CV-10353-TGB-EAS<br>HON. TERRENCE G. BERG<br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 8)** |

The United States ("Plaintiff") has filed an action against H & P Protective Services, Inc. ("Defendant") for failure to pay back wages to fifty-six (56) employees in violation of the Fair Labor Standards Act. ECF No. 1. Defendant filed an Answer to the complaint on March 3, 2025 (ECF No. 4) but never responded to Plaintiff's Motion for Summary Judgment filed on June 25, 2025 (ECF No. 8). According to the Scheduling Order, Discovery was set to close on October 13, 2025, and the deadline for dispositive motions expired on November 10, 2025. ECF No. 7. In an Order to Show Cause issued on October 16, 2025, the Court ordered Defendant to respond to Plaintiff's motion for summary judgment by October 27, 2025, and warned that failure to respond to the Motion may be construed as a decision not to contest the facts presented in the Motion and/or an admission of the merits of the Motion. ECF No. 9. Defendant failed to respond either to the Motion or the Court's Order to Show Cause.

For the following reasons, Plaintiff's Motion for Summary Judgment will be **GRANTED**.

I. BACKGROUND

Defendant, H & P Protective Services, Inc., is an active Michigan corporation whose main office is located at 29829 Greenfield Rd, Southfield, 48076 Michigan.

The United States Secretary of Labor conducted an investigation of Defendant's business operations from February 2, 2017 to February 1, 2019 under the Fair Labor Standards Act. *Back Wage Compliance and Payment Agr.* ("Exhibit B"), ECF No. 8-2, PageID.66. Following the investigation, the Secretary concluded that Defendant owed back pay to 56 employees in the amount of $40,073.91 in back wages and $40,073.91 in liquidated damages for a total of $80,147.82. *Summary of Unpaid Wages* ("Exhibit A"), ECF No. 8-1, PageID.56-64.

On November 4, 2019, in order to resolve the issue, Defendant agreed to pay $80,147.82 in back wages through monthly installment payments. Exhibit B, ECF No. 8-2, PageID.66. The Agreement provided that "[s]hould the employer fail to make any agreed payment as scheduled, the entire unpaid balance will immediately become due and payable, together with such additional collection and court costs as may be incurred by the U.S. Department of Labor in pursuing collection," including a 6% penalty rate assessed on debt remaining delinquent for more than 90 days. *Id.* at PageID.67.

2

But Defendant soon failed to make payments. While the Department of Labor acknowledged that Defendant made partial payments totaling $3,284.90, the debt became delinquent on November 22, 2019. *Certificate of Indebtedness* ("Exhibit D"), ECF No. 8-4, PageID.74. On February 18, 2020, the Department of Labor sent Defendant a debt collection notice, providing 30 days to pay the debt before referring the action for collection. *Debt Collection Notice* ("Exhibit C"), ECF No. 8-3, PageID.69. The letter warned that "[u]pon referral to Treasury, an additional 28% administrative fee, as well as appropriate interest and penalty charges will be added to the amount due." *Id*. On May 16, 2020, the Department of Labor referred the claim to the Treasury's Debt Management Services ("DMS"), which subsequently referred the claim to the Department of Justice on May 26, 2022 for litigation and collection. Exhibit D, ECF No. 8-4, PageID.74-75.

The United States filed this action on February 6, 2025, and requests a judgment in the amount of $140,521.01, plus statutory interest. ECF No. 8, PageID.53. This amount includes the monetary violations, minus Defendant's partial payment, plus a 2% annual interest rate, a 6% annual penalty rate, and administrative fees. Exhibit D, ECF No. 1-4, PageID.27. In his Answer to the Complaint, Defendant explains he was aware of the investigation by the Department of Labor but was "unclear concerning the outcome." ECF No. 4, PageID.32. He admits he entered into an Agreement to pay, but explains he was unable to pay due

to the financial condition of the business, notably because of the start of the COVID-19 pandemic. *Id.* Defendant stated he is willing to pay a reasonable amount of the funds owed to the Department of Labor as well as the filing fee, but he asks the Court to take into consideration the pandemic period and the financial condition of Defendant's business. *Id.* at PageID.33.

## II. LEGAL STANDARD

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in their favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and admissions on file that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has carried its burden under Rule 56, its opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" and instead must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita*, 475 U.S. at 586-87 (emphasis in original). The non-moving party cannot "rest upon the mere allegations or denials of his

pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant must still show "sufficient evidence to create a genuine issue of material fact." *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no genuine dispute of material fact for trial. *Matsushita*, 475 U.S. at 587.

### III.  DISCUSSION

While a court cannot grant a motion for summary judgment "solely because the non-moving party has failed to respond to the motion," it can do so after "examin[ing] the moving party's motion for summary judgment to ensure that it has discharged its initial burden" to demonstrate the absence of a disputed question of material fact and entitlement to relief under Rule 56. *Tellis v. Bouchard*, 2024 U.S. Dist. LEXIS 174789, *2 (E.D. Mich. May 29, 2024); *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(e)(3)).

Here, after reviewing Plaintiff's four exhibits and considering Defendant's admissions in his Answer, the Court finds there is no genuine dispute of material fact.

Plaintiff introduced compelling evidence of its entitlement to the debt, through the Summary of Unpaid Wages sent to Defendant on October 28, 2019 (Exhibit A, ECF No. 8-1, PageID.56-64), the Back Wage Compliance and Payment Agreement the parties entered into in November 2019 (Exhibit B, ECF No. 8-2, PageID.66), the Debt Collection

5

Notice sent to Defendant on February 18, 2020 (Exhibit C, ECF No. 8-3, PageID.69), and the Department of Labor's Certificates of Indebtedness dated December 31, 2024 and June 20, 2025 (Exhibit D, ECF No. 8-4, PageID.74). As of December 31, 2024, the Department of Labor certified that Defendant's debt amounted to $140,521.01. Exhibit D, ECF No. 1-4, PageID.27.[1] Courts have found that such evidence, and particularly, a Certificate of Indebtedness, is sufficient to establish a prima facie case for money due and owing to the government. *See United States v. Petroff-Kline*, 557 F.3d 285, 290 (6th Cir. 2009) (noting that "the government may introduce evidence of the note and a sworn transcript of the account or certificate of indebtedness" to "make a prima facie showing that "(1) the defendant signed [the note], (2) the government is the present owner or holder and (3) the note is in default") (citing *United States v. Davis,* 28 Fed. App'x. 502, 503 (6th Cir. 2002)).

"Once such a prima facie case is established, defendant has the burden of proving the nonexistence, extinguishment or variance in payment of the obligation." *Id.* Importantly, in this case, Defendant admitted entering into the Agreement to pay back the debt in November 2024 and did not dispute the debt or his failure to pay back the debt. In fact, Defendant stated he agreed to pay the debt, but asked that the

---

[1] As of June 20, 2025, the Department of Labor certifies that the amount of the debt increased to $144,441.25. ECF No. 8, PageID.75.

6

judgment be "reasonable" in light of the business's financial issues and COVID-19 pandemic. ECF No. 4, PageID.32-33.

But Defendant did not suggest what amount might be "reasonable," and did not provide financial records to allow the Court to assess Defendant's financial abilities. Furthermore, Defendant's argument that he was unable to pay because of the pandemic is not well taken, as the investigation, the Agreement, and the default all occurred months before the COVID-19 pandemic started in the United States in March of 2020. On the contrary, the amount requested by the Government appears reasonable under the Fair Labor Standards Act and the Agreement Defendant entered into with the federal government.

Under 31 U.S.C. § 3717, the Department of Labor is entitled to the amount of the debt, and to charge a fixed minimum annual rate of interest on outstanding debt accruing from the date Defendant received notice of the amount due, as well as a charge to cover the cost of processing and handling a delinquent claim, and a penalty charge of not more than 6% a year for failure to pay a part of a debt more than 90 days past due. The Agreement between the Government and Defendant also warned that a penalty at the rate of 6% would be assessed on any portion of the debt remaining delinquent for more than 90 days (Exhibit B), and the February 18, 2020 Debt Collection Notice warned that "[u]pon referral to Treasury, an additional 28% administrative fee, as well as appropriate interest and penalty charges will be added to the amount

7

due" (Exhibit C). Thus, while the principal amount of the debt was originally $80,147.82, the government is entitled to an annual interest rate of 2.0% (daily interest of $4.21), an annual penalty rate of 6.0% (daily penalty of $12.64), and administrative fees for failure to pay back wages for 56 employees. *Certificate of Indebtedness*, ECF No. 1-4, PageID.26. Defendant is entitled to a reduced principal amount because of his partial payment of $3,284.90. The cost break-down, as of December 31, 2024, is as follows:

| | |
|---|---|
| Principal: | $ 76,862.92 |
| Interest (@2.00%): | $ 6,599.68 |
| Penalty (@6.00%): | $ 19,799.05 |
| Admin Fees: | $ 37,259.36 |
| **Total:** | **$140,521.01** |

Exhibit D, ECF No. 1-4, PageID.27.

Furthermore, as the Defendant admitted, the government is also entitled to the filing fee for the instant action. *See* 28 U.S.C. § 2412(a)(2) ("A judgment for costs, when awarded in favor of the United States in an action brought by the United States, may include an amount equal to the filing fee prescribed under section 1914(a) of this title."); ECF No. 4, PageID.32 ("Defendant is willing to pay the filing fee.").

Thus, in the absence of any opposition, or evidence in support of such opposition, to the Government's position that the amount requested is reasonable, the Court concludes that the amount is reasonable and well-supported by the record.

8

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 8) is **GRANTED**.

**SO ORDERED**.

Dated: December 22, 2025    /s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE